# EXHIBIT B



Filed 4/15/2016 4:06:01 PM
R. David Guerrero
District Clerk
Jim Wells County, Texas
Maricela Rinche, Deputy

Cause No. 16-04-55856-CV

| | | |
|---|---|---|
| MUY PIZZA-TEJAS, LLC | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | JIM WELLS COUNTY, TEXAS |
| | § | |
| AMERICAN SAFETY INDEMNITY | § | |
| COMPANY and RIVERSTONE | § | |
| RESOURCES, LLC | § | |
| | § | _____ JUDICIAL DISTRICT |
| Defendant. | | |

## PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES, MUY PIZZA-TEJAS, LLC ("MUY Pizza"), Plaintiff in this cause, complaining of American Safety Indemnity Company and RiverStone Resources, LLC and alleges the following claims and causes of action:

### I.

#### DISCOVERY CONTROL PLAN

1.    MUY Pizza intends that Discovery be conducted under Discovery Level 3 as provided in TEX. R. CIV. P. 190.3.

### II.

#### PARTIES AND SERVICE

2.    Plaintiff, MUY PIZZA-TEJAS, LLC is a Texas domestic Limited Liability Company created under the laws of Texas with its principal place of business located in San Antonio, Texas.

3.    Defendant, American Safety Indemnity Company ("ASIC") is a foreign surplus lines insurer authorized by the Texas Department of Insurance to engage in the business of insurance in this state. At all times pertinent to the causes of action alleged

---

herein, ASIC engaged in business in the State of Texas and in Alice, Jim Wells County, Texas. Although ASIC engages in business in Texas, it has no Certificate of Authority to do so and has not designated a resident agent for process in this state. ASIC was purchased in 2013 and is owned and/or controlled by RiverStone Resources, LLC. Accordingly, pursuant to TEX. R. CIV. P 108, service may be had upon ASIC by serving its authorized representative, Nicholas C. Bentley, President of ASIC and Chairman, Chief Executive Officer and President of RiverStone Resources, LLC at 250 Commercial Street, Suite 5000, Manchester, New Hampshire 03101-1116. In addition, because ASIC is a surplus lines carrier that does not have a registered agent in this State, service may be made upon the Commissioner of the Texas Department of Insurance, David Mattax as provided by TEX. INS. CODE § 804.201(a)(3). Upon receipt of service, the Commissioner shall immediately send by registered or certified mail, return receipt requested, a copy of the citation and this Petition to ASIC pursuant to TEX. INS. CODE § 804.203(a)(1).

4.      Defendant, RiverStone Resources, LLC ("RiverStone"), is a foreign company created under the laws of Delaware, which, at all times pertinent to the causes of action alleged herein, engaged in business in the State of Texas and in Alice, Jim Wells County, Texas. RiverStone may be served by with citation by certified mail, return receipt requested by serving its registered agent, CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, Texas 75201.

### III.

#### JURISDICTION AND VENUE

5.      The amount in controversy exceeds the minimum jurisdictional limits of this Court. This Court has jurisdiction over the parties because Defendants, at all times

---

pertinent to the causes of action alleged herein, did business in the State of Texas and established minimum contacts with Texas.

6.     The non-resident Defendants, ASIC and RiverStone, purposefully directed their activities toward this State and purposefully availed themselves of the privileges of conducting business in Texas.  MUY Pizza's claims and causes of action alleged herein arise out of the non-resident Defendants RiverStone and ASIC's contacts with this State. In particular, ASIC, who is owned and/or controlled by RiverStone, sold the Insurance Policy at issue[1] in this case to MUY Pizza in Texas thereby establishing sufficient minimum contacts with Texas and further purposefully availed themselves of the privileges of doing business in this State by generally selling and placing insurance policies in Texas. As such, this Court's exercise of jurisdiction over RiverStone and ASIC does not offend traditional notions of fair play and substantial justice. All other allegations in this pleading are incorporated herein and relied upon in support of MUY Pizza's position that the Court has jurisdiction over Defendants RiverStone and ASIC.

7.     Venue is proper in this Court pursuant to TEX. CIV. PRAC. & REM. CODE § 15.002(a)(1) because this suit is brought in the county in which all or a substantial part of the events or omissions giving rise to MUY Pizza's claims occurred.

### IV.

### AGENCY, VICARIOUS LIABILITY AND RESPONDEAT SUPERIOR

8.     Where and when ever in this Petition it is alleged that Defendant, ASIC, did any act, or failed to do any act, it is meant that ASIC's principals, including RiverStone as the company that owns and/or controls ASIC, and ASIC's vice-principals, agents, servants, employees and/or representatives did, or failed to do, such acts, and

---

[1] The "Policy" is the ASIC EXCESS HIRED AND NON-OWNED AUTO (ANY EMPLOYED DRIVER), Policy No. 158SISIAU196901, for the Policy Period 07/01/2013 to 08/01/2014 attached hereto as **Exhibit A** and incorporated herein by reference.

that at the time such acts or omissions occurred, they were done with authorization or ratification of Defendants ASIC and RiverStone, and/or were done in the normal course and scope of employment of Defendants, ASIC and RiverStone's principals', agents', servants', employees' and/or representatives' respective job-related duties.

**V.**

**SUMMARY OF CLAIM**

9.     MUY Pizza purchased an insurance policy from ASIC to cover claims arising out of auto accidents occurring while MUY Pizza's Pizza Hut delivery drivers delivered pizza. Unfortunately, in May 2014, one of MUY Pizza's delivery drivers was involved in auto accident while delivering pizza. As a result, the occupants of the vehicle involved in the accident filed a lawsuit against MUY Pizza, MUY Brands, LLC, Pizza Hut, Inc., and the pizza delivery driver, John Michael Charles. Plaintiffs allege that Charles was "operating the vehicle in the course and scope of his employment for MUY PIZZA-TEJAS,LLC, MUY PIZZA BRANDS, LLC [sic] PIZZA HUT, INC., and MUY PIZZA, LLC[2]."[3] These named Defendants are insured under the Policy and are referred to herein as the "Covered Defendants." Plaintiffs allege the Covered Defendants proximately caused the personal injury damages sustained by each Plaintiff in the accident.[4]

10.     All Covered Defendants deny liability arising out of the May 2014 accident. However, as the lawsuit was filed and defense was necessary, pursuant to its rights under the Policy, MUY Pizza, on its behalf and the other Covered Defendants, has

---

[2] On September 28, 2015 MUY Pizza, LLC merged into MUY Pizza-Tejas, LLC, a named insured under the Policy and the Plaintiff in this case, and MUY Pizza-Tejas, LLC was the sole surviving entity subsequent to the merger.
[3] Plaintiffs' First Amended Petition ("Plaintiffs' Petition"), ¶ 10, is attached hereto as **Exhibit B** and incorporated herein by reference.
[4] Exhibit B, Plaintiffs' Petition, ¶ ¶ 11 and 12.

made repeated requests on ASIC to provide a defense and indemnity. However, ASIC has wholly failed to comply with its obligations under the Policy, claiming it has no duty to defend because the driver Charles' primary automobile liability insurance (an individual insurance policy) had lapsed. MUY Pizza is currently defending the lawsuit for all Covered Defendants without the participation of an insurer due to ASIC's refusal to meet its coverage and defense obligations.

11.     Rather than construing the Policy in favor of MUY Pizza and the other Covered Defendants as it must under Texas law, ASIC interprets a covenant, the Policy's "loss control" provision relating to the driver having a minimum limit individual policy, in isolation in an attempt to justify its wrongful denial. Under Texas law, it is clear that the Policy's "loss control" provision does not exclude the Covered Defendants, as ASIC contends, because it is not a condition precedent to coverage and ASIC has not been prejudiced due to Charles failure to have adequate insurance in place under his individual policy.  Further, ASIC's proffered interpretation of the "loss control" provision is inconsistent with the specific language of the Policy's Self-Insured Retention ("SIR") endorsement which provides for coverage in instances where the delivery driver fails to maintain his or her individual insurance coverage. As such, MUY Pizza files this suit seeking relief due to ASIC's breach of the insurance policy and for ASIC's breaches of various common law and statutory duties implicated by ASIC's repeated and wrongful coverage denial.

## VI.

### BACKGROUND FACTS

#### A. THE POLICY

12.     MUY Pizza purchased a Commercial Hired and Non-Owned Auto Policy, Policy No. 158SISIAU196901 (the "Policy") from ASIC to cover claims arising out of,

among other occurrences, automobile accidents involving MUY Pizza's Pizza Hut delivery drivers. The Policy's coverage period was from July 1, 2013 to August 1, 2014 and the Policy provided liability coverage up to the amount of $2,000,000 per accident. MUY Pizza paid premiums to ASIC during the coverage period for the coverage provided under the Policy. The Policy covers the Covered Defendants in this case either as Named Insureds[5] or as an Additional Insured[6].

13.    The Policy's Insuring Agreement provides ASIC:

[W]ill pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the maintenance and use of a covered "auto".[7]

A covered auto under the Policy includes both "hired" and "non-owned" autos. "Non-owned" autos include vehicles owned by MUY Pizza's employees, including Pizza Hut delivery drivers, while used in the furtherance of MUY Pizza's business affairs. Thus, material to this coverage dispute, the vehicle owned by MUY Pizza's delivery driver Charles is covered as a "Non-owned' auto under the Policy.[8]

14.    The MUY Pizza Policy also contains a "loss control" provision which states that MUY Pizza's delivery drivers need to maintain valid primary automobile liability insurance which applies while the driver is in the course and scope of his or her employment.[9]  ASIC errantly takes the position that MUY Pizza's delivery driver's alleged non-compliance with this provision voids coverage under the Policy. To the contrary, Texas law holds such provisions are covenants, not conditions precedent

---

[5] Named Insureds on p. 1 of the DECLARATIONS of the Policy include "MUY Pizza LLC [and] MUY Pizza Tejas LLC."  Exhibit A, p. 1.
[6] Pizza Hut, Inc. is named as an "Additional Insured" in the Policy.  Exhibit A, ADDITIONAL INSURED – DESIGNATED PERSON OR ORGANIZATION AND AMENDED CANCELLATION Endorsement, p. 1.
[7] Exhibit A, SECTION I – COVERAGE, A. INSURING AGREEMENT, p. 1.
[8] Exhibit A, COMMERCIAL HIRED AND NON-OWNED AUTO EXCESS COVERAGE FORM ("Coverage Form"), SECTION II – COVERED AUTOS, p.4.
[9] Exhibit A, Coverage Form, p. 5-6.

which, if breached, do not automatically void coverage. *E. Tex. Med. Ctr. Reg'l Healthcare Sys. v. Lexington Ins. Co.*, 6:04-CV-165, 2011 WL 773452, at *4 (E.D. Tex. Feb. 25, 2011) ("Like most jurisdictions, Texas now treats most policy provisions as covenants, which if breached do not automatically excuse the insurer's obligation to pay." (citing *PAJ, Inc. v. Hanover Ins. Co.*, 243 S.W.3d 630, 631 (Tex. 2008))).

15.    In addition, Texas law requires that an insurer demonstrate actual prejudice in order to avoid coverage for an alleged breach of a covenant like the "loss control" provision contained in the Policy requiring MUY Pizza's delivery drivers to maintain valid liability auto insurance. *Lexington Ins. Co.*, 2011 WL 773452, at *4 ("Citing Texas law, the Fifth Circuit has said that '[p]rejudice' is the loss of a valuable right or benefit' and that prejudice occurs when the insurer suffers a material adverse change in position due to the breach. The loss of a right with no demonstrated value does not prejudice the insurer. Also, the insurer must demonstrate *actual prejudice*.") (emphasis in original). Here, ASIC cannot demonstrate actual prejudice to avoid coverage under the Policy, based on MUY Pizza's delivery driver's alleged failure to maintain valid liability auto insurance.

16.    Also relevant to the claim is the Policy's self-insured retention (SIR") provision which requires MUY Pizza to pay the first $7,500 toward resolution and/or defense of a claim. The Policy's Self Insured Retention Endorsement ("SIR Endorsement") states:

> If the drivers insurance is determined to be uncollectible and the Company [ASIC] determines the Insured has done due diligence in following the Special Restrictions for the Operation of Automobiles (CA AS 0111) the SIR provisions will not apply.[10]

---

[10] Exhibit A, SELF INSURED RETENTION ENDORSEMENT, p. 1.

Pursuant to the SIR Endorsement, in the event one of MUY Pizza's drivers' insurance is uncollectible, the Policy still provides coverage and, in certain instances, MUY Pizza's $7,500 SIR responsibility can be waived. Thus, the SIR Endorsement provides coverage in instances where the driver's insurance is uncollectible. In this case, as ASIC admits, the insurance is "uncollectable" but under the terms of the Policy, ASIC's duty to defend and coverage responsibilities remain in place.

17.     Material to the existence of the SIR endorsement, Texas law provides that specific language contained in an endorsement controls over more general language contained in the policy. *E.g., Nat'l Am. Ins. Co. v. Breaux*, 368 F. Supp. 2d 604, 611 (E.D. Tex. 2005) ("Specific provisions in the policy control over general statements of coverage. Similarly, "[e]ndorsements control over conflicting general policy language."). Thus, the Policy's "loss control" general policy language conflicts with the specific SIR Endorsement which unambiguously provides coverage when a driver's insurance is uncollectible. As such, the SIR Endorsement controls. *Id.* This is also true because Texas law requires insurance policies to be interpreted in favor of the insured and against the insurer. *Prudential Ins. Co. of Am. v. Beall*, 454 S.W.2d 478, 480 (Tex. App.—Eastland 1970, writ ref'd n.r.e.) ("When there is a conflict between provisions of a policy or an ambiguity appears in an insurance contract drafted by the insurer, the provision or interpretation thereof most favorable to the insured will control.").

18.     ASIC's persistent refusal to tender a defense and indemnify MUY Pizza for the accident discussed below is a clear violation of Texas law.

## B. THE ACCIDENT AND THE GARCIA LAWSUIT

19.     On May 9, 2014, Charles, a Pizza Hut delivery driver employed by MUY Pizza, was involved in an automobile accident while he was delivering a pizza in Alice,

Texas (the "Accident"). MUY Pizza's Alice Pizza Hut location is specifically identified in the Policy's Schedule of Locations. The vehicle being driven by Charles at the time of the Accident was a "non-owned" covered auto as defined in the Policy.

20.    The occupants of the other vehicle involved in the Accident, Jesse Garcia, Irica Garcia and their two minor children, I.G. and J.G. (the "Garcias"), asserted personal injury claims against the Covered Defendants allegedly arising from the Accident. MUY Pizza timely notified ASIC of the Accident and the claims asserted by the Garcias. However, on March 25, 2015, ASIC improperly denied coverage for the Accident based on its claim that the vehicle driven by Charles was allegedly not insured under Charles' personal auto liability policy.

21.    On May 4, 2015, the Garcias filed a lawsuit against MUY Pizza, Charles, Pizza Hut, Inc., MUY Brands, LLC seeking personal injury damages they allegedly sustained in the Accident which suit was subsequently amended to also name MUY Pizza, LLC as a defendant. The Garcias' lawsuit is styled, Cause No. 15-05-54551-CV; *Jesse Garcia, Irica Garcia, Individually, and as next friend of I.G., and J.G. vs. John Michael Charles, MUY Pizza-Tejas, LLC, MUY Brands, LLC, Pizza Hut, Inc. and MUY Pizza, LLC* and is pending in the 79th Judicial District Court, Jim Wells County, Texas ("Garcia Lawsuit").

## C. ASIC REFUSES TO TENDER A DEFENSE OR INDEMNIFY MUY PIZZA

22.    Upon receiving notice of the Garcias' claim arising out of the Accident, MUY Pizza timely notified ASIC of the claim. MUY Pizza further complied with the Policy's covenant's regarding its delivery drivers' liability auto insurance for their personal vehicles.

23.    Despite MUY Pizza's performance of its obligations under the Policy, after

receiving notice of the Garcias' claim, ASIC, through its authorized representative, denied coverage because Charles allegedly failed to maintain valid auto liability insurance for his personal vehicle that he was driving at the time of the Accident. After ASIC's initial denial of coverage, the Garcia Lawsuit was filed and MUY Pizza was forced to engage attorneys at its own expense to defend the Covered Defendants. Due to ASIC's failure to tender a defense, MUY Pizza has been required to defend all facets of the case at its own expense and without the benefit of the services promised by ASIC under the Policy.

24.    On October 15, 2015, MUY Pizza once again requested that ASIC tender a defense and that ASIC indemnify MUY Pizza from the claims asserted in the Garcia Lawsuit. In detail, MUY Pizza informed ASIC why its coverage denial was wrong, explaining, among other reasons, that ASIC could not rely on the "loss control" provision in the Policy to deny coverage based on Charles' alleged failure to maintain liability insurance for his vehicle. MUY Pizza further advised ASIC that, under Texas law, the "loss control" provision was a covenant, not conditions precedent, that an insurer must demonstrate actual prejudice to deny coverage for an alleged breach of a covenant and, in fact, the Policy provides coverage through the SIR Endorsement even when the driver's individual policy is uncollectable.

25.    Despite having all of this information so that it could evaluate and correct its improper coverage denial, ASIC neither responded to the October 15, 2015 letter, nor even returned repeated phone calls from MUY Pizza's attorneys to discuss ASIC's coverage denial. ASIC's wrongful conduct gives rise to the following causes of action.

## VII.

### CAUSES OF ACTION

#### A. BREACH OF CONTRACT

26.    MUY Pizza incorporates by reference as though fully set forth herein Paragraphs 1 through 25 above.

27.    MUY Pizza purchased the Policy from ASIC in exchange for payment of premiums by MUY Pizza to ASIC. The Policy is a valid written insurance contract between MUY Pizza and ASIC and the event giving rise to ASIC's coverage and defense obligations occurred during the Policy period. MUY Pizza has complied with all of its duties under the Policy and has performed all conditions precedent required to bring this claim.

28.    As set forth above, the Policy's Insuring Agreement provides ASIC:

[W]ill pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the maintenance and use of a covered "auto".[11]

The vehicle being driven by Charles at the time of the Accident was a covered "auto" as defined by the Policy. The Policy further provides that ASIC has the "right and duty to defend any 'suit' asking for these damages."[12] It is undisputed that the Garcia Lawsuit is a "suit" in which the Garcias seek "bodily injury" damages as contemplated by the Policy. It is further undisputed that the Accident occurred within the Policy's coverage period on May 9, 2014. As such, under the Insuring Agreement of the Policy, ASIC has a duty to defend and indemnify the Covered Defendants.

29.    However, as detailed above, ASIC wrongfully denied coverage and has

---

[11] Exhibit A, SECTION I – COVERAGE, A. INSURING AGREEMENT, p. 1.
[12] Id.

refused to tender a defense as required under the Policy. ASIC first wrongfully denied coverage on March 25, 2015, after MUY Pizza provided notice to ASIC of the Garcias' claims as well as numerous subsequent demands for defense and indemnity.

30.     ASIC's wrongful conduct constitutes a breach of the Policy for which MUY Pizza hereby sues. ASIC's wrongful coverage denial is a direct, producing and proximate cause of injury and damages to MUY Pizza and the Covered Defendants. ASIC's breach of the Policy has caused MUY Pizza on behalf of the Covered Defendants to incur damages in the past and will, if a defense and indemnity is not provided, in the future due to ASIC failure to honor its contractual obligations under the Policy.

31.     MUY Pizza's damages include, but are not limited to, the attorney's fees and litigation expenses MUY Pizza has been forced to pay to date as well as those which, in all likelihood it will be required to pay in the future, on behalf of the Covered Defendants as a direct result of ASIC's wrongful coverage denial. In the alternative, MUY Pizza seeks the remedy of specific performance and requests that the Court enter an order requiring ASIC to provide a defense for the Covered Defendants in the Garcia Lawsuit and, in the event any of the Covered Defendants are found liable for causing any of the alleged damages at issue in the Garcia Lawsuit (which MUY Pizza denies), an order requiring ASIC to indemnify MUY Pizza and the Covered Defendants as required under the Policy.

### B. BREACH OF DUTY OF GOOD FAITH & FAIR DEALING

32.     MUY Pizza incorporates by reference as though fully set forth herein Paragraphs 1 through 31 above.

33.     As MUY Pizza's insurer, ASIC owed MUY Pizza the common law duty of

good faith and fair dealing with respect to its investigation, handling and disposition of MUY Pizza's request for coverage under the Policy. Rather than deal fairly and in good faith with MUY Pizza's request for coverage under the Policy as required by Texas law, ASIC breached its duty and acted in bad faith, when it wrongfully denied MUY Pizza's repeated requests for ASIC to tender a defense in the Garcia Lawsuit.

34.     ASIC's breach of the duty of good faith and fair dealing is further demonstrated by its unjustified refusal to even acknowledge MUY Pizza's October 15, 2015 correspondence in which MUY Pizza provided ASIC with controlling law that established ASIC's prior coverage denial was incorrect. Simply put, rather than act fairly and in good faith with respect to MUY Pizza's request for a defense and indemnity in the Garcia Lawsuit, ASIC chose to violate Texas law by ignoring MUY Pizza's request for coverage without a reasonable basis on which to do so.

35.     ASIC's bad faith and breach of the duty of good faith and fair dealing and bad faith has been a direct and proximate cause of damages to MUY Pizza and, in the event ASIC continues to violate its common law duties owed to MUY Pizza and further engages in bad faith, MUY Pizza will incur additional damages.

## C. TEXAS INSURANCE CODE VIOLATIONS

36.     MUY Pizza incorporates by reference as though fully set forth herein Paragraphs 1 through 35 above.

37.     ASIC's unlawful and wrongful conduct detailed above constitutes violations of the Texas Insurance Code, which violations include, without limitation:

> a.  Misrepresentations of a material fact or Policy provision relating to the coverage under the Policy; TEX. INS. CODE § 541.060(a)(1);
>
> b.  Failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of Plaintiff's request for ASIC to tender a defense under the Policy for which ASIC's duty to provide such defense and

coverage is, and has been, reasonably clear; TEX. INS. CODE § 541.060(a)(2);

    c. Failing to promptly provide a reasonable explanation of the basis in the Policy, in relation to the facts or applicable law, for the denial of MUY Pizza's request for coverage under the Policy and for MUY Pizza's request for ASIC to tender a defense in the Garcia Lawsuit; TEX. INS. CODE § 541.060(a)(3), and

    d. Failing to, within a reasonable time, affirm or deny coverage to MUY Pizza after the Garcia Lawsuit was filed and after receiving MUY Pizza's October 15, 2015 correspondence wherein MUY Pizza requested ASIC to provide a defense and indemnity in response to the Garcia Lawsuit. TEX. INS. CODE § 541.060(a)(4)(A).

38.    ASIC's unlawful and wrongful conduct detailed above also constitutes violations of the Texas Insurance Code, which violations include, without limitation:

    a. Making an untrue statement of a material fact regarding coverage under the Policy; TEX. INS. CODE § 541.061(1); and

    b. Making a material misstatement of law regarding coverage under the Policy and ASIC's duties under the Policy; TEX. INS. CODE § 541.061(2).

39.    ASIC's violations of Chapter 541 of the Texas Insurance Code have been a producing cause of MUY Pizza's damages, and MUY Pizza is entitled to recover actual damages, court costs, and reasonable and necessary attorney's fees pursuant to Section 541.152 of the Texas Insurance Code. In addition, because ASIC's conduct was committed knowingly and/or intentionally, MUY Pizza is entitled to recover additional damages pursuant to Section 541.152 of the Texas Insurance Code.

## VIII.

### ECONOMIC AND ACTUAL DAMAGES

40.    MUY Pizza sustained and/or will sustain the following economic and actual damages as a result of the actions and/or omissions of ASIC described hereinabove·

---

(a) Out-of-pocket damages including, but not limited to attorney's fees and court and litigation costs incurred in defending the Covered Defendants in the Garcia Lawsuit because ASIC has refused to tender a defense despite being obligated to do so by the Policy;

(b) Future out-of-pocket damages including, but not limited to attorney's fees and the court and litigation costs MUY Pizza will incur in defending the Covered Defendants in the Garcia Lawsuit should ASIC continue to refuse to tender a defense despite being obligated to do so by the Policy; and

(b) Costs associated with payment of any settlement or payment of a judgment should one be entered against MUY Pizza in the Garcia Lawsuit.[13]

MUY Pizza also seeks to recover from ASIC pre and post-judgment interest at the highest rate provided by law, court costs and all other and further relief to which MUY Pizza may be justly entitled.

## IX.

### ALTERNATIVE REQUEST FOR SPECIFIC PERFORMANCE

41.    Alternatively, MUY Pizza seeks an order from the Court directing ASIC to provide a defense and indemnity to the Covered Defendants as required under the Policy. MUY Pizza would show that unless specific performance is ordered, MUY Pizza and the Covered Defendants have no adequate remedy at law because they will lose their valuable right to a defense and indemnity should the Garcia Lawsuit proceed to trial without ASIC tendering MUY Pizza a defense as required by the Policy. MUY Pizza would further show that it has fully performed all of its obligations under the Policy to be entitled to the equitable remedy of specific performance.

---

[13] MUY Pizza vehemently denies any of the Defendants are liable as alleged by Plaintiffs in the Garcia Lawsuit and that the Plaintiffs in the Garcia Lawsuit are entitled to recover any damages against it, or any other Defendants named therein. However, as with all litigation, settlements may be reached due to the costs and time involved in defending cases, as well as other issues which MUY Pizza must take into account in litigation of the nature of the Garcia Lawsuit.

## X.

### ATTORNEYS' FEES

42.     As a result of ASIC's actions and/or omissions including, but not limited to the ASIC's breach of the Policy and violations of the Texas Insurance Code, MUY Pizza has been required to obtain the services of the law firm of PORTER, ROGERS, DAHLMAN, & GORDON, P.C., for the enforcement of its rights in connection with this action. Accordingly, pursuant to TEX. CIV. PRAC. & REM. CODE § 38.001 *et seq.* and TEX. INS. CODE § 541.152, MUY Pizza is entitled to recover its reasonable and necessary attorneys' fees from ASIC through the trial of this case as well as any appeal to the Court of Appeals or to the Supreme Court of Texas. MUY Pizza hereby presents its claim for attorneys' fees in the amount of $15,000 to ASIC in accord with TEX. CIV. PRAC. & REM. CODE § 38.002 and TEX. INS. CODE § 541.152. Of course, should ASIC choose not pay MUY Pizza's attorney's fees, the amount of fees will increase as this case proceeds to trial.

### XI.

### CONDITIONS PRECEDENT

43.     All conditions precedent to MUY Pizza's recovery have been performed and/or have occurred.

### XII.

### PREJUDGMENT INTEREST

44.     MUY Pizza seeks and is entitled to all prejudgment interest as allowed by law.

## XIII.

### REQUEST FOR DISCLOSURE

45.     Pursuant to Rule 194.2 of the Texas Rules of Civil Procedure, MUY Pizza requests that Defendant discloses, within fifty (50) days of service of this request all of the information or material described in TRCP 194.2(a)-(l).

## XIV.

### JURY DEMAND

46.     MUY Pizza hereby demand a trial by jury and tenders the appropriate jury fee with the filing of this Petition.

### PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff, MUY Pizza-Tejas, LLC, prays that the Defendants be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for MUY Pizza-Tejas, LLC against Defendants for the damages requested herein in an amount in excess of the minimum jurisdictional limits of the Court, together with prejudgment and post-judgment interest at the maximum rate allowed by law, attorneys' fees and costs of court. MUY Pizza-Tejas, LLC further requests that the Court order Defendants to provide a defense to MUY Pizza and the Covered Defendants in the Garcia Lawsuit and to indemnity them as required by the Policy. MUY Pizza also requests such other and further relief to which it is entitled.

Respectfully submitted,

**PORTER, ROGERS, DAHLMAN & GORDON, P.C.**
Trinity Plaza II
745 East Mulberry Ave, Suite 450
San Antonio, Texas 78212
(210) 736-3900 (Telephone)
(210) 736-1992 (Facsimile)

By: _____
    Richard G. Foster
    State Bar No. 07295100
    rfoster@prdg.com
    Raj Aujla
    State Bar No. 24064846
    raujla@prdg.com

**ATTORNEYS FOR PLAINTIFF,
MUY PIZZA-TEJAS, LLC**

## COMMERCIAL HIRED AND NON-OWNED AUTO
## DECLARATIONS

Renewal of Number:   NEW

| | |
|---|---|
| **ASI**<br>AMERICAN SAFETY INSURANCE<br><br>American Safety Indemnity Company<br>100 Galleria Parkway, Suite 700<br>Atlanta, GA 30339 | **Policy No.: 158SISIAU196901**<br><br>**Item # 1.  Named Insured and Mailing Address:**<br><br>MUY Pizza LLC; MUY Pizza-Tejas LLC; MUY Pizza Houston LLC<br>DBA· Pizza Hut<br>17890 Blanco Road<br>San Antonio, TX 78232-1039 |
| **Producer:**<br>Sunderland Insurance Services, Inc<br>3021 Citrus Circle, Suite #220<br>Walnut Creek, CA 94598 | **Item # 2.** Policy Period: From 07/01/2013 To 08/01/2014<br>at 12 01 AM Standard Time at your Mailing Address shown above |

**IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

**Item # 3.  DESCRIPTION OF INSURANCE AFFORDED HEREUNDER:**

EXCESS HIRED & NON-OWNED AUTO (ANY EMPLOYED DRIVER)

**Item # 4.  LIMITS OF INSURANCE**

| | |
|---|---|
| Liability Coverage Limit | $2,000,000 CSL |
| EXCESS OF: | |
| 4. (a)  Self Insured Retention | $7,500  Per Accident |

**Item # 5.  PREMIUM**

| | |
|---|---|
| Annual Minimum & Deposit Premium | $589,302.00 |
| Minimum & Deposit premium for the Policy Period | $639,393.00 |
| Adjustable at a rate of $8.32 per $1,000 of delivery receipts | |
| **Minimum Earned Premium** | 25% of the Annual Minimum & Deposit Premium. |

**Item # 6.  FORMS AND ENDORSEMENTS**

Forms and Endorsements applying to this Coverage Part and made part of this Policy at time of issuance:
CA AS 0099 0410, CA AS 01 10  0507, CA AS 0123 0108, CA AS 0131 0412, IL P 001 01 04, CA AS 0107 0507, CA AS 0108 0507, CA AS 0295 0911, CA AS 0296 0810,CA  AS 0115 0507

Countersigned: 8/22/2013                    By:        *Holly Belknap*

(Authorized Representative)

CA AS 0099 0410                                                          Page 1 of 2

EXHIBIT A                    **11/19/2013 01:25 PM**

In Witness Whereof, this Company has caused this policy to be signed by its President and Secretary, but if required by state law, this policy shall not be valid unless countersigned by an authorized representative of the Company.

Secretary                                          President

**THIS ENDORSEMENT CHANGES THE POLICY.   PLEASE READ CAREFULLY.**

This endorsement forms a part of Policy # 158SISIAU196901       By. American Safety Indemnity Company

Such insurance as is afforded by this policy applies solely to the covered autos only while operating from or on behalf of the following schedule of Named Insured's location(s).

## SCHEDULE OF LOCATIONS

| Loc # | Address | City | State | Zip Code |
|-------|---------|------|-------|----------|
| 1 | 607 East Hondo Avenue | Devine | TX | 78016 |
| 2 | 521 West Highway 83 | Roma | TX | 78584 |
| 3 | 999 Junction Highway | Kerrville | TX | 78028 |
| 4 | 9055 Marbach Road #103 | San Antonio | TX | 78283 |
| 5 | 539 19th Street | Floresville | TX | 78114 |
| 6 | 730 South Santa Rosa | San Antonio | TX | 78204 |
| 7 | 890 North Business I-35 | New Braunfels | TX | 78131 |
| 8 | 2549 South West Military Drive | San Antonio | TX | 78283 |
| 9 | 1343 West Oaklawn (Highway 97 West) | Pleasanton | TX | 78064 |
| 10 | 1433 South Main Street #110 | Boerne | TX | 78006 |
| 11 | 3820 FM 3009 Suite 154 | Schertz | TX | 78154 |
| 12 | 110 South WW White | San Antonio | TX | 78273 |
| 13 | 1820 General McMullen | San Antonio | TX | 78283 |
| 14 | 1749 Loop 410 Southwest | San Antonio | TX | 78283 |
| 15 | 201 Pena Street | Carrizo Springs | TX | 78232 |
| 16 | 2425 East Main Street | Eagle Pass | TX | 78853 |
| 17 | 20630 Highway 46 West #135 | Bulverde | TX | 78153 |
| 18 | 2114 Veterans Boulevard | Del Rio | TX | 78841 |
| 19 | 915 South Saint Mary's Street | Falfurries | TX | 78355 |
| 20 | 814 North Oak Street | Pearsall | TX | 78061 |
| 21 | 4300 East Highway 83 | Rio Grande City | TX | 78582 |
| 22 | 1008 South West Military Drive | San Antonio | TX | 78283 |
| 23 | 1926 Goliad Road | San Antonio | TX | 78283 |
| 24 | 3323 Roosevelt Avenue | San Antonio | TX | 78283 |
| 25 | 2035 South Hackberry | San Antonio | TX | 78283 |
| 26 | 602 South Main Avenue | Lovington | NM | 88260 |
| 27 | 2112 North Turner Street | Hobbs | NM | 88240 |
| 28 | 1201 South Canal Street | Carlsbad | NM | 88220 |
| 29 | 3404 North Navarro | Victoria | TX | 77901 |
| 30 | 1103 North Washington | Beeville | TX | 78102 |
| 31 | 312 Highway 90A East | Gonzales | TX | 78629 |
| 32 | 210 West Sinton Street | Sinton | TX | 78387 |
| 33 | 425 North 35 Highway Bypass | Port Lavaca | TX | 77979 |

CA AS 0110 0507                                                    Page 1 of 4

11/19/2013 01:25 PM

| | | | | |
|---|---|---|---|---|
| 34 | 402 South Broadway | Post | TX | 79356 |
| 35 | 945 Highway 90 East | Castroville | TX | 78009 |
| 36 | 7002 Northeast Zac Lentz Parkway #A | Victoria | TX | 77904 |
| 37 | 4414 Ayers Street | Corpus Christi | TX | 78415 |
| 38 | 1330 14th Street | Kingsville | TX | 78363 |
| 39 | 4815 South Staples Street | Corpus Christi | TX | 78411 |
| 40 | 10525 South Padre Island | Corpus Christi | TX | 78418 |
| 41 | 10702 Leopard Street | Corpus Christi | TX | 78410 |
| 42 | 309 West Avenue J | Robstown | TX | 78380 |
| 43 | 2120 South Staples | Corpus Christi | TX | 78404 |
| 44 | 3545 North Yarborough | El Paso | TX | 79925 |
| 45 | 2915 North Mesa Street | El Paso | TX | 79902 |
| 46 | 6704 Montana Avenue | El Paso | TX | 79925 |
| 47 | 7960 North Mesa Street | El Paso | TX | 79932 |
| 48 | 4815-B Saratoga Boulevard | Corpus Christi | TX | 78413 |
| 49 | 1800 North George Dieter Drive | El Paso | TX | 79936 |
| 50 | 5201 Montana Avenue | El Paso | TX | 79903 |
| 51 | 601 North Zaragosa | El Paso | TX | 79907 |
| 52 | 3821 South Staples | Corpus Christi | TX | 78411 |
| 53 | 6105 North Mesa Street | El Paso | TX | 79902 |
| 54 | 1571 Zaragosa Road | El Paso | TX | 79936 |
| 55 | 5933 Mcardle Road | Corpus Christi | TX | 78412 |
| 56 | 1041 Highway 181 | Portland | TX | 78374 |
| 57 | 7948 Gateway East | El Paso | TX | 79915 |
| 58 | 6537 South Staples Suite 120 | Corpus Christi | TX | 78413 |
| 59 | 4101 Highway 77 (M6) | Corpus Christi | TX | 78410 |
| 60 | 2711 Highway 35 North | Rockport | TX | 78381 |
| 61 | 5612 Dyer Street | El Paso | TX | 79912 |
| 62 | 10765 Kenworthy Street #E | El Paso | TX | 79924 |
| 63 | 2000 East Main Street | Alice | TX | 78333 |
| 64 | 955 North Resler Drive #101 | El Paso | TX | 79912 |
| 65 | 2735 West Wheeler Avenue | Aransas Pass | TX | 78336 |
| 66 | 3657 East Leopard Street | Corpus Christi | TX | 78408 |
| 67 | 2959 Carter Road | El Paso | TX | 79906 |
| 68 | 502 East Main Street | Uvalde | TX | 78801 |
| 69 | 140 North Kenazo Suite F | Horizon City | TX | 79928 |
| 70 | 140 North Kenazo Suite G | Horizon City | TX | 79928 |
| 71 | 10610 North Loop Suite N1 | Socorro | TX | 79927 |
| 72 | 14414 US Highway 87 West #0091 | La Vernia | TX | 78121 |
| 73 | 302 Valley Hi Drive #102 | San Antonio | TX | 78243 |
| 74 | 319 South Main Street Suite C | Anthony | TX | 79821 |
| 75 | 229 East Grant | Roma | TX | 78584 |
| 76 | 1591 East Highway 6 Suite 114 | Alvin | TX | 77511 |
| 77 | 1203 North Velasco Street | Angleton | TX | 77515 |
| 78 | 12000 Bellaire Boulevard Suite 200 | Houston | TX | 77072 |
| 79 | 8880 Bellaire Boulevard Suite D | Houston | TX | 77036 |
| 80 | 7076 Bissonnette SP A-10 | Houston | TX | 77074 |
| 81 | 11017A Chimney Roack Rd | Houston | TX | 77096 |
| 82 | 10886 Beechnut Street | Houston | TX | 77072 |
| 83 | 8400 West Belfort Avenue | Houston | TX | 77071 |

CA AS 0110 0507

11/19/2013 01:25 PM

| 84 | 12775 Bissonet Street | Houston | TX | 77099 |
|---|---|---|---|---|
| 85 | 1805 West 18th Street | Houston | TX | 77008 |
| 86 | 3320 Highway 6 South (Mission Bend B) | Houston | TX | 77082 |
| 87 | 3620 Katy Freeway Suite D | Houston | TX | 77007 |
| 88 | 4616 North Freeway Suite D200 | Houston | TX | 77022 |
| 89 | 5330 Antoine Drive | Houston | TX | 77091 |
| 90 | 743 Dairy Ashford Street | Houston | TX | 77079 |
| 91 | 5302 Chimney Rock Road | Houston | TX | 77081 |
| 92 | 12120 Westheimer Road | Houston | TX | 77077 |
| 93 | 2018 North Gessner Drive | Houston | TX | 77080 |
| 94 | 7820 Long Point Road | Houston | TX | 77055 |
| 95 | 6415 San Felipe Street M1 | Houston | TX | 77057 |
| 96 | 2100 West Holcombe Boulevard | Houston | TX | 77030 |
| 97 | 9369 Richmond Avenue | Houston | TX | 77063 |
| 98 | 4724 Richmond Avenue | Houston | TX | 77027 |
| 99 | 1225 Westheimer Road | Houston | TX | 77006 |
| 100 | 1227 West 43rd Street | Houston | TX | 77018 |
| 101 | 10555A Westheimer Road | Houston | TX | 77042 |
| 102 | 2323 Clear Lake City Boulevard #110 | Houston | TX | 77062 |
| 103 | 2402 Bay Area Boulevard Suite E | Houston | TX | 77058 |
| 104 | 10904 Scarsdale Boulevard Suite 130 | Houston | TX | 77089 |
| 105 | 4407 West Fuqua Street Suite F | Houston | TX | 77045 |
| 106 | 150 1st Street West | Humble | TX | 77338 |
| 107 | 3103 K-FM 1960 East | Humble | TX | 77338 |
| 108 | 720 A Kingwood Drive | Humble | TX | 77339 |
| 109 | 3050 Northpark Drive | Humble | TX | 77339 |
| 110 | 1307 West Fairmont Pkwy | La Porte | TX | 77571 |
| 111 | 651 Egret Bay Boulevard Suite G | League City | TX | 77573 |
| 112 | 2800 West Main | League City | TX | 77573 |
| 113 | 3033 Shaver Street | Pasadena | TX | 77502 |
| 114 | 4014 Fairmont Parkway | Pasadena | TX | 77504 |
| 115 | 6845 Spencer Highway | Pasadena | TX | 77505 |
| 116 | 2000 Bayport Boulevard | Seabrook | TX | 77586 |
| 117 | 4001-I Bellaire Boulevard | Southside Place | TX | 77025 |
| 118 | 24914 Kuykendahl Suite A | Spring | TX | 77379 |
| 119 | 2757 Rayford Road Suite F | Spring | TX | 77386 |
| 120 | 8765 Spring Cypress Road | Spring | TX | 77379 |
| 121 | 20051 Interstate 45 | Spring | TX | 77388 |
| 122 | 18539 Kuykendahl Road | Spring | TX | 77379 |
| 123 | 1211 West Main Street | Tomball | TX | 77375 |
| 124 | 2350 North Main Street | Liberty | TX | 77575 |
| 125 | 24040 FM 1314 Road | Porter | TX | 77365 |
| 126 | 3091 College Park Drive Suite 220 | Conroe | TX | 77384 |
| 127 | 25701 IH-45 North Suite 1 | The Woodlands | TX | 77380 |
| 128 | 6700 Woodlands Parkway Building East Suite 110 | Spring | TX | 77382 |
| 129 | 702 North Brazosport Boulevard | Freeport | TX | 77541 |
| 130 | 120 Circle Way Street | Lake Jackson | TX | 77566 |
| 131 | 2728 Broadway Street | Pearland | TX | 77581 |
| 132 | 6200 Broadway Suite 124 | Pearland | TX | 77581 |
| 133 | 11601 Shadow Creek Parkway #119 | Pearland | TX | 77584 |

CA AS 0110 0507

11/19/2013 01:25 PM

| 134 | 10504 Broadway Street | Pearland | TX | 77584 |
|-----|------------------------|----------|-----|-------|
| 135 | 12207 State Highway 6 Suite F | Fresno | TX | 77545 |
| 136 | 11611 West Airport Boulevard | Stafford | TX | 77477 |
| 137 | 2292 FM 2234 Road | Missouri City | TX | 77459 |
| 138 | 7103 Highway 6 South Suite A | Missouri City | TX | 77459 |
| 139 | 16635 West Airport Boulevard | Sugar Land | TX | 77496 |
| 140 | 3638 Highway 6 Bay P7 | Sugar Land | TX | 77478 |
| 141 | 1020 Eldridge Road | Sugar Land | TX | 77478 |
| 142 | 2705 61st Suite C | Galveston | TX | 77551 |
| 143 | 3010 FM 1764 Road | La Marque | TX | 77568 |
| 144 | 2305 Palmer Highway | Texas City | TX | 77590 |
| 145 | 105 Kenning Road #3 | Crosby | TX | 77532 |
| 146 | 13750 North Eldridge Parkway #100 | Cypress | TX | 77429 |
| 147 | 108 West Parkwood | Friendswood | TX | 77546 |
| 148 | 17254 West Montgomery Road | Houston | TX | 77064 |
| 149 | 15002 Ella Boulevard #18 | Houston | TX | 77090 |
| 150 | 12618 Jones Road | Houston | TX | 77070 |
| 151 | 3410 Gulf Freeway Suite 3426 | Dickinson | TX | 77539 |
| 152 | 13526 East Tidwell Suite 100 | Houston | TX | 77044 |
| 153 | 13176 West Lake Houston Parkway #2 | Houston | TX | 77044 |
| 154 | 9441 Cullen Boulevard Suite A1 | Houston | TX | 77051 |
| 155 | 19574 FM 1485 Suite C | New Caney | TX | 77357 |
| 156 | 12404 Highway 6 | Santa Fe | TX | 77510 |

CA AS 0110 0507

11/19/2013 01:25 PM

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# SERVICE OF SUIT CLAUSE

It is agreed that the service of process in any request for indemnity on the policy against American Safety Indemnity Company may be made upon the highest one in authority bearing the title "Commissioner", "Director" or "Superintendent" of Insurance of the state or Commonwealth wherein the policy is issued.

Further, pursuant to any statute of any state, territory or District of the United States which makes provision therefore, the Company hereby designates the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as our true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary hereunder, arising out of this contract of insurance.

**All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged.**

### COMMERCIAL HIRED AND NON-OWNED AUTO EXCESS
### COVERAGE FORM
### (Defense Outside Limit)

Various provisions in this policy restrict coverage   Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations   The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning   Refer to SECTION VI - DEFINITIONS

### SECTION I – COVERAGE

**A.   INSURING AGREEMENT**

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the maintenance or use of a covered "auto"

We have the right and duty to defend any "suit" asking for   these damages.  However, we have no duty to defend "suits" for "bodily injury" or "property damage" not covered by this Coverage Form. We may investigate and settle any claim or "suit" as  we consider appropriate   Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements

**B.   EXCLUSIONS**

This insurance does not apply to any of the following·

**1.   CARE, CUSTODY OR CONTROL**

"Property damage" to property owned or transported by the "insured" or in the "insured's" care, custody or control.  But this exclusion does not apply to liability assumed under a sidetrack agreement

**2.   CONTRACTUAL**

Liability assumed under any contract or agreement

But this exclusion does not apply to liability for damages:

    a.   Assumed in a contract or agreement that is an "insured contract"; or

    b.   That the "insured" would have in the absence of the contract or agreement.

**3.   CROSS LIABILITY**

"Bodily injury" or "property damage" arising from claims or "suits" brought by·

Includes copyrighted material of ISO Properties, Inc. with its permission.
Copyright, ISO Properties, Inc. 2001

a.  One "insured" against another "Insured.

b.  Any parent company or parent corporation of any "insured", or any subsidiary company or subsidiary corporation or any "insured".

c.  Any other company or corporation owned by any of the entities described in **a. or b.** above.

d.  Any division or department of any of the entities described in **a., b., or c.** above.

e.  Any officer, director or employee of any of the entities described in **a., b., c., or d** above.

**4.  EMPLOYEE INDEMNIFICATION AND EMPLOYER'S LIABILITY**

"Bodily Injury" to.

a  An employee of the "insured" arising out of and in the course of employment by the "insured", or

b.  The spouse, child, parent, brother or sister of that employee as a consequence of paragraph a. above.

This exclusion applies:

(1)  Whether the "insured" may be liable as an employer or in any other capacity; and

(2)  To any obligation to share damages with or repay someone else who must pay damages because of the injury.

But this exclusion does not apply to "bodily injury" to domestic employees not entitled to workers compensation benefits.

**5.  EXPECTED OR INTENDED INJURY**

"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured".

**6.  FELLOW EMPLOYEE**

"Bodily injury" to any fellow employee of the "insured" arising out of and in the course of the fellow employee's employment.

**7.  HANDLING OF PROPERTY**

"Bodily injury" or "property damage" resulting from the handling of property:

a  Before it is moved from the place where it is accepted by the "insured" for movement into or onto the covered "auto", or

b.      After it is moved from the covered "auto" to the place where it is finally delivered by the "insured"

## 8.   MOVEMENT OF PROPERTY BY MECHANICAL DEVICE

"Bodily injury" or "property damage" resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered auto.

## 9.   POLLUTION

a.     "Bodily injury" or "property damage" which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time

b.     Any loss, cost or expense arising out of any

(1)    Request, damage or order that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects or "pollutants", or

(2)    Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants"

"Pollutants" means any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste. Waste includes material to be recycled, reconditioned or reclaimed

This exclusion does not apply to fuels, lubricants, fluids, exhaust gases or other similar pollutants that are needed for or result from the normal electrical, hydraulic or mechanical functioning     of the covered "autos" or its parts, if the pollutants escape or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such pollutants and the discharge, dispersal, release or escape of the pollutants is caused directly by the upset, overturn or damage of a covered "auto".

## 10.   RACING

Covered "autos" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. This insurance also does not apply while that covered "auto" is being prepared for such a contest or activity.

## 11.   WAR OR TERRORISM

"Bodily injury" or "property damage" arising, directly or indirectly, out of

a     War, including undeclared or civil war; or

 Includes copyrighted material of ISO Properties, Inc. with its permission. Copyright, ISO Properties, Inc. 2001

11/19/2013 01:25 PM

b     Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

c.     Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these; or

d     "Terrorism", including any action taken in hindering or defending against an actual or expected incident to "terrorism" regardless of any other cause or event that contributes concurrently or in any sequence to the injury or damage.

In the event of any incident of "terrorism" that is not subject to the Terrorism Exclusion, coverage does not apply to any loss or damage that is otherwise excluded under this Coverage Part.

Multiple incidents of "terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident

**12.    WORKERS COMPENSATION**

Any obligation for which the "insured" or the "insured's" insurer may be held liable under any workers compensation, disability benefits or unemployment compensation law or any similar law.

**SECTION II- COVERED AUTOS**

**1. HIRED "AUTOS"**

Only those "autos" you lease, hire, rent or borrow This does not include any "auto" you lease, hire, rent or borrow from any of your employees or partners or members of their households.

**2. NON-OWNED "AUTOS"**

Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business This includes "autos" owned by your employees or partners or members of their household but only while used in your business affairs.

**SECTION III - WHO IS AN INSURED**

"You" are an "insured" for any covered "auto"

**SECTION IV – LIMITS OF INSURANCE**

Regardless of the number of covered "autos", "insured's", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for all damages, resulting from any one "accident" is the Limit of Insurance shown in the Declarations.

All "bodily injury" or "property damage" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident".

11/19/2013 01:25 PM

1.    **SUPPLEMENTARY PAYMENTS**

    a.    We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

        (1)    All expenses we incur including loss costs and defense.

        (2)    Up to $250 for cost of bail bonds (including bonds for related traffic law violations) required because of an "accident" we cover.  We do not have to furnish these bonds.

        (3)    The cost of bonds to release attachments in any "suit" we defend, but only for bond amounts within our Limit of Insurance

        (4)    All reasonable expenses incurred by the "insured" at our request, including actual loss of earnings up to $100 a day because of time off from work.

        (5)    All costs taxed against the "insured" in any "suit" we defend.

        (6)    All interest on the full amount of any judgment that accrues after entry of the judgment in any "suit" we defend; but our duty to pay interest ends when we have paid, offered to pay or deposited in court the part of the judgment that is within the applicable Limit of Insurance.

    These payments will not reduce the limits of insurance

    b    Out of State Coverage Extensions

        While a covered "auto" is away from the state where it is licensed we will

        (1)    Increase the Limit of Insurance for Liability Coverage to meet the limits specified by a compulsory or financial responsibility law of the jurisdiction where the covered "auto" is being used.  This extension does not apply to the limit or limits specified by any law governing motor carriers of passengers or property.

        (2)    Provide the minimum amounts and types of other coverages, such as no fault, required of out of state vehicles by the jurisdiction where the covered "auto" is being used

We will not pay anyone more than once for the same elements of loss because of these extensions.

## SECTION V - CONDITIONS

The following conditions apply·

1.    **LOSS CONTROL**

    The Named Insured agrees that.

**11/19/2013 01:26 PM**

I     Each driver while engaging in delivery, courier or similar duties on behalf of the Named Insured, will maintain valid primary automobile liability insurance:

    a     applicable to that driver's delivery, courier or similar duties for the Named Insured,

    b.    with limits at least equal to the minimum financial responsibility limits mandated in the state of the location where the driver is employed,

    c.    in full force and effect while this policy is in effect.

II    The Named Insured will

    a    obtain and maintain a copy of either:

        1    each policy referenced in Paragraph I above, or

        2.    a Certificate of Insurance evidencing the existence of specific coverages, exclusions and limits of each policy referenced in paragraph I above

    b    provide copies to the insurance company ("us") upon request

## 2.    LOSS CONDITIONS

**DUTIES IN THE EVENT OF "ACCIDENT", OCCURRENCE, CLAIM, "SUIT" OR "LOSS"**

a.    The "insured", upon knowledge of any "accident", occurrence, claim, "suit" or "loss" likely to give rise to a claim hereunder, shall give immediate written notice thereof to us. Regardless of whether it appears likely to give rise to a claim hereunder or not, the "insured" shall always promptly report to us the following kinds of "accidents", occurrences,   claims, "suits" or "losses".

    (1)    law suits or other legal actions based on matters which may or may not be covered under the Policy,

    (2)    claims, "suits" or demands which involve amounts greater than 25% of the applicable "self insured retention";

    (3)    the sum demanded is equal to or exceeds your "self insured retention",

    (4)    fatalities;

    (5)    paralysis,

    (6)    injuries involving permanent disfigurement, disability or amputations;

    (7)    injuries to the spinal cord or spinal column,

    (8)    brain damage,

11/19/2013 01:26 PM

      (9)     birth injuries,

      (10)    burns or radiology cases;

      (11)    total or partial loss of eyesight;

      (12)    severe internal injuries,

      (13)    fracture with moderate to high disability,

      (14)    multiple fractures;

      (15)    events involving more than two claimants;

      (16)    injury or damage which is alleged to have started to occur prior to the inception of this Policy or to still be occurring after the termination of this Policy.

b.    The company, upon knowledge of any "accident", occurrence, claim, "suit" or "loss", which may apply to such insurance as is afforded by this policy, shall immediately

      (1)     determine how, when and where the "accident", occurrence or "loss" took place;

      (2)     obtain the names and addresses of any injured persons and witnesses;

      (3)     determine the nature and location of any injury or damage arising out of the "accident", occurrence or "loss";

      (4)     initiate adequate discovery process to determine the "Insured's" negligence and liability (or the lack thereof),

      (5)     when necessary, obtain competent legal counsel to assist in the discovery process and advise the "insured" of their options in the settlement of a potential claim or "suit" and

      (6)     accept any reasonable (as determined by us) offer of settlement within the "self insured retention".

c.    If a claim or "suit" brought against the "insured" with respect to an "accident", occurrence or "loss" is likely to give rise to a claim hereunder; the "insured" shall immediately forward to us every demand, notice, summons or other process received by the insured or his representative

      In the event any other liability insurer denies coverage for any reason whatsoever for a "loss" which may be covered hereunder, written notice shall immediately be given by or on behalf of the "insured" to us. Such notice shall contain the reason for such denial as stated by such other insurer. As a condition precedent to making a claim under this policy, the "insured", upon our request, shall initiate legal proceedings against said other insurer to determine by final judgment the legality of its position

d.    The "insured" shall cooperate with us and, upon our request, assist in making settlements, in the conduct of "suits", and in enforcing any right of contribution or indemnity against any

person or organization who may be liable to the "insured" because of "loss" or damage with respect to which insurance is afforded under this policy; and the "insured" shall:

   (1)   attend hearings and trials,

   (2)   assist in securing and giving evidence,

   (3)   obtain the attendance of witnesses.

**3.   TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US**

a.   In the event of any payment under this policy, the "insured" will notify us of any of the "Insured's" rights of recovery therefrom against any person or organization. We shall be subrogated to all such rights of the "insured" and the "insured" shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The "insured" shall do nothing after a "loss" to prejudice such rights.

b   Any amount recovered through subrogation or otherwise, shall be apportioned in the inverse order of payment of the claim or claims involved to the extent of actual payment thereof by all interests and the expenses of all such recoveries and proceedings in connection therewith shall be apportioned in the ratio of respective recoveries. With respect to the proceedings conducted solely by us,

   (1)   If there is no recovery, we shall bear the expense thereof and

   (2)   If there is a recovery, we shall be reimbursed in full from such recovery for the amount of all expenses incurred by us before apportionment of such recovery as hereinabove provided

**4.   LEGAL ACTION AGAINST US**

No one may bring a legal action against us under this policy until:

a   There has been full compliance with all the terms of this policy; and

b   We agree in writing that the "Insured" has an obligation to pay or until the amount of that obligation has finally been determined by judgment after trial. No one has the right under this policy to bring us into an action to determine the "Insured's" liability.

**5.   BANKRUPTCY**

Bankruptcy or insolvency of the "insured" or the "Insured's" estate will not relieve us of any obligations under this policy

**6.   OTHER INSURANCE**

Any insurance available to the owner or driver of a hired or non-owned auto through their personal auto liability insurance shall be considered primary and underlying to any other collectible insurance.

**7.   PREMIUM AUDIT**

CAAS 0131 0412      Includes copyrighted material of ISO Properties, Inc. with its permission.     Page 8 of 13

Copyright, ISO Properties, Inc. 2001

11/19/2013 01:26 PM

a     The estimated premium for this policy is based on the exposures you told us you would have when this policy began.  The estimated premium is also the policy minimum premium.  We will compute the final premium due when we determine your actual exposures.  The estimated total premium will be credited against the final premium earned and the first Named Insured will be billed for the balance, if any.  If the estimated total premium and policy minimum premium exceed the final earned premium, the policy minimum premium will apply.

b.    In case of cancellation, this policy is subject to an absolute minimum earned premium of 25% of the annual minimum and deposit premium which is to be retained by the Company

## 8.    POLICY PERIOD, COVERAGE TERRITORY

We cover "accidents" occurring:

a     During the policy period shown in the Declarations; and

b.    Within the coverage territory

The coverage territory is:

a)    The United States of America,

b)    The territories and possessions of the United States of America,

c)    Puerto Rico; and

d)    Canada.

provided the "Insured's" responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a) above or in a settlement we agree to.

We also cover "loss" to, or "accidents" involving, a covered "auto" while being transported between any of these places.

## 9.    TWO OR MORE COVERAGE FORMS OR POLICIES ISSUED BY US

If this policy and any other policy issued to you by us or any company affiliated with us apply to the same "accident", the aggregate maximum Limit of Insurance under all the policies shall not exceed the highest applicable Limit of Insurance under any one policy. This condition does not apply to any policy issued by us or an affiliated company specifically to apply as excess insurance over this policy.

## 10.    CONCEALMENT, MISREPRESENTATION OR FRAUD

This policy is void in any case of fraud by you at any time as it relates to this policy   It is also void if you or any other "insured", at any time, intentionally conceals or misrepresents a material fact concerning

a     This policy,

    b.    The covered "auto";

    c.    Your interest in the covered "auto"; or

    d.    A claim under this policy.

**11.**    **INSUREDS WARRANTY OF APPLICATION AND LOSS INFORMATION**

You, through your insurance brokers, have provided information to us which has induced us to issue this insurance policy. Included in the information provided is an application and other correspondence including your claim or "loss" history. This information is

considered to be a part of this policy.

You should review this information carefully as the truth of this information was of paramount importance in influencing our decision to issue this policy.

You, for all "insureds" under this policy, do warrant the truth of such information to the best of your and their knowledge at the effective date of this policy. You declare that you and they know no incident, occurrence, event, circumstance, or claim which has taken place or become known prior to the effective date of this policy which may render inaccurate, untrue, incomplete or misleading any information or statement made in the application or the information which was provided

The "insured" understands that if such information is now false or misleading it may cause denial of coverage under this policy.

**12.**    **CANCELLATION**

This policy may be canceled by you by mailing to us written notice stating when thereafter the cancellation shall be effective. This policy may be canceled by us by mailing to you at the address shown in the Declarations written notice stating when not less than thirty (30) days thereafter, ten (10) for non-payment of premium, such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The effective date of cancellation stated in the notice shall become the end of the policy period   Delivery of such written notice either by you or by us shall be equivalent to mailing

If you cancel, earned premium or minimum premium, whichever is greater, shall be computed in accordance with the customary short rate table and procedure   If we cancel, earned premium or minimum premium, whichever is greater, shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation. If you cancel, we will retain no less than 25% of the annual minimum and deposit as a minimum earned premium.

**SECTION VI - DEFINITIONS**

    a    "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

**11/19/2013 01:26 PM**

b.    "Auto" means a land motor vehicle, trailer or semi-trailer designed for travel on public roads but does not include "mobile equipment"

c.    "Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these

d.    "Insured" means any person or organization qualifying as an "insured" in the Who Is An Insured provision of the applicable coverage.  Except with respect to the Limit of Insurance, the coverage afforded applies separately to each "insured" who is seeking coverage or against whom a claim or "suit" is brought.

e.    "Insured contract" means·

       1.    A lease of premises;

       2.    A sidetrack agreement,

       3     An easement or license agreement in connection with vehicle or pedestrian private railroad crossings at grade,

       4     Any other easement agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad,

       5.    An indemnification of a municipality as required by ordinance, except in connection with work for a municipality; or

       6.    That part of any other contract or agreement pertaining to your business under which you assume the tort liability of another to pay damages because of "bodily injury" or "property damage" to a third person or organization, if the contract or agreement is made prior to the "bodily injury" or "property damage".  Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

       Any "insured contract" does not include that part of any contract or agreement:

       1     That pertains to the loan, lease or rental of an "auto" to you; or

       2.    That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a covered "auto" over a route or territory that person or organization is authorized to serve by public authority.

f.    "Loss" means direct and accidental loss or damage.

g.    "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment.

       1     Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

       2.    Vehicles maintained for use solely on or next to premises you own or rent,

       3     Vehicles that travel on crawler treads;

4. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

    a    Power cranes, shovels, loaders, diggers or drills, or

    b.    Road construction or resurfacing equipment such as graders, scrapers or rollers.

5. Vehicles not described in paragraphs **1, 2, 3, or 4** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

    a    Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment, or

    b.    Cherry pickers and similar devices used to raise or lower workers.

6 Vehicles not described in paragraphs **1, 2, 3, or 4** above maintained primarily for purposes other than the transportation of persons or cargo   However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos".

    a.    Equipment designed primarily for.

        (1)    Snow removal;

        (2)    Road maintenance, but not construction or resurfacing; or

        (3)    Street cleaning.

    b.    Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

    c    Air compressors, pumps and generators, including spraying, welding, building leaning, geophysical exploration, lighting or well servicing equipment.

h. "Property damage" means damage to or loss of use of tangible property

i. "Suit" means a civil proceeding in which damages because of "bodily injury" or "property damages" to which this insurance applies are alleged.  "Suit" includes an arbitration proceeding alleging such damages to which you must submit or submit with our consent.

j "Terrorism" means activities against persons, organizations or property of any nature:

    1.    That involve the following or preparation for the following:

        a Use of threat or force or violence by any means; or

        b Commission or threat of a dangerous act by any means; or

11/19/2013 01:26 PM

      c. Commission or threat of an act that interferes with or disrupts an electronic communication, information, or mechanical system by any means, and

2      When one or both of the following applies:

      a.      The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

      b.      It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

11/19/2013 01:26 PM

IL P 001 01 04

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency".O FAC has identified and listed numerous·

- Foreign agents,
- Front organizations;
- Terrorists;
- Terrorist organizations, and
- Narcotics traffickers,

as "Specially Designated Nationals and Blocked Persons" This list can be located on the United States Treasury's web site – httpl/www.treas gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments norp remium refunds may be made without authorization from OFAC Other limitations on the premiums and payments also apply.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT**
**(Broad Form)**

This endorsement modifies insurance provided under all the COVERAGE FORMS attached to this policy.

1. The insurance does not apply:

A. Under any Liability Coverage, to "bodily injury" or "property damage":

  (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

  (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which

    (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or

    (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of "nuclear material", if:

  (1) The "nuclear material"

    (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or

    (b) has been discharged or dispersed therefrom;

  (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an "insured"; or

  (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

CA AS 0107 0507                                                                                          Page 1 of 2

11/19/2013 01:26 PM

2. As used in this endorsement:

"Hazardous properties" include radioactive, toxic or explosive properties;

"Nuclear material" means "source material", "special nuclear material" or "by-product material";

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

"Waste" means any waste material

(a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and

(b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for

(1) separating the isotopes of uranium or plutonium,

(2) processing or utilizing "spent fuel", or

(3) handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste"; and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive contamination of property.

CA AS 0107 0507

11/19/2013 01:26 PM

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## **RESTRICTION OF COVERAGE ENDORSEMENT**

In consideration of the payment of the premium charged, it is understood and agreed that no insurance, whether primary or excess, is afforded by this policy for liability, claims expense or supplementary payments arising from:

[ x ]   1. Medical Payments

[ x ]   2. Personal Injury Protection (P.I.P), Added P.I.P. or any other similar laws
           or statutes available under any state or federal "Automobile Reparations Act"

[ x ]   3. Uninsured Motorists or Underinsured Motorists laws or statutes

[  ]    4. Hired Autos

[  ]    5. Non-Ownership Liability

[ x ]   6. Owned Autos

The above listed coverages, with an "x" placed within the bracket "[ ]",a re excluded from coverage as provided by this policy.

If this is an excess policy and the underlying insurance provides coverage for one or more of the coverages excluded by this policy, the underlying limits of insurance shall not be reduced due to the payment of any coverages excluded by this policy.

All other terms and conditions remain unchanged.

CA AS 0108 0507                                                                 Page 1 of 1

**11/19/2013 01:26 PM**

**SELF INSURED RETENTION ENDORSEMENT**

This endorsementm odifies insurance provided under the following
Hired & Non-Owned Auto Excess Liability -- Defense Outside

If a Self-Insured Retention is indicated in item 4 (a) of the Declarations, the following provisions apply·

1. "Self-Insured Retention" means the sums an "insured" must pay first as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the maintenance use of a covered "auto," before this policy applies  The "Self-Insured Retention" does not include covered "Supplementary Payments" but does include Third Party Administrator (TPA) expenses  The amounts of TPA expenses paid will not reduce the "Self-Insured Retention" by the amounts paid

2. Any other insurance which is collectible under **Section V, Item 6. Other Insurance,** shall    reduce the amount of the "Insured's" "self insured retention" in an amount equal to thatc ollected

3. If the drivers insurance is determined to be uncollectible and the Company determines the Insured has done due diligence in following the Special Restrictions for the Operation of Automobiles (CA AS 0111) the SIR provisions will not apply

**ADDITIONAL SELF INSURED RETENTION PROVISIONS**

Notwithstanding any provision of the SELF INSURED RETENTION PROVISIONS to the contrary.

1. For each "accident", the limit of insurance applicable to the insured's COMMERCIAL AUTO COVERAGE "self-insured retention" will be the limit shown on Item 4  of the Declarations page

2. The obligations of the Named Insured for the Self Insured Retention will be handled by the following Third Party Administrator ("TPA") engaged and compensated by the Named Insured, and approved by us before such engagement·

Name, Address, Phone Number
PMA Insurance Group
P.O. Box 25248
Lehigh Valley,P A 18002
(888) 476-2869

3. Any change of TPA will require prior approval by us.  Once approved, such change will be endorsed onto the policy

I understand and agree to the above and certify that I am authorized to do so on behalf of the Named Insured

_____
Signature

_____
Name and Title

_____
Date

**11/19/2013 01:26 PM**

**SELF INSURED RETENTION ENDORSEMENT**

This endorsement modifies insurance provided under the following:
Hired & Non-Owned Auto Excess Liability – Defense Outside

If a Self-Insured Retention is indicated in Item 4 (a) of the Declarations, the following provisions apply:

1.   "Self-Insured Retention" means the sums an "insured" must pay first as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the maintenance use of a covered "auto," before this policy applies. The "Self-Insured Retention" does not include covered "Supplementary Payments" but does include Third Party Administrator (TPA) expenses. The amounts of TPA expenses paid will not reduce the "Self- Insured Retention" by the amounts paid.

2.   Any other insurance which is collectible under Section V, Item 6. Other Insurance, shall   reduce the amount of the "insured's" "self insured retention" in an amount equal to that collected.

3.   If the drivers insurance is determined to be uncollectible and the Company determines the insured has done due diligence in following the Special Restrictions for the Operation of Automobiles (CA AS 0111) the SIR provisions will not apply.

### ADDITIONAL SELF INSURED RETENTION PROVISIONS

Notwithstanding any provision of the SELF INSURED RETENTION PROVISIONS to the contrary:

1.   For each "accident", the limit of insurance applicable to the insured's COMMERCIAL AUTO COVERAGE "self-insured retention" will be the limit shown on Item 4. of the Declarations page.

2.   The obligations of the Named Insured for the Self Insured Retention will be handled by the following Third Party Administrator ("TPA") engaged and compensated by the Named Insured, and approved by us before such engagement:

Name, Address, Phone Number

PMA Insurance Group

P.O. Box 25248

Lehigh Valley, PA 18002

(888) 476-2669

3.   Any change of TPA will require prior approval by us. Once approved, such change will be endorsed onto the policy.

I understand and agree to the above and certify that I am authorized to do so on behalf of the Named Insured.

_James H. Bodenstedt, Manager_

Signature

James H. Bodenstedt, Manager

Name and Title

06-26-2013

Date

CA AS 0295   0911            American Safety Indemnity Company            Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**SPECIAL RESTRICTIONS FOR THE OPERATION OF AUTOMOBILES**
**Franchisor Specific Guidelines**

The Named Insured has made the following disclosures as a part of the application for the insurance afforded by this policy:

The Named Insured has a high "turn over" of drivers in his/her business;a nd/or,
The Named Insured mustr ely on retail delivery of his/her product.

In reliance upon the application for thei nsurance afforded by this policy and with the understanding of the above disclosures by the Named Insured, the Named Insured and the Company have agreed as follows:

**Named Insured is a Franchise of Pizza Hut and agrees to comply with all driver eligibility criteria required by the Franchisor.  A copy of the Franchisor's standards must be on file with the Company. Failure to comply with the Franchisor's guidelines may void coverage under this policy.**

**I have read this SPECIAL RESTRICTION OF COVERAGE in its entirety and**
**agree on behalf of alli nsureds,t o comply with all of its terms and conditions:**

_____

**Signature of Insured or Officer of Insured Entity**

CA AS 0296 0810                                                          Page 1 of1

**11/19/2013 01:26 PM**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

### SPECIAL RESTRICTIONS FOR THE OPERATION OF AUTOMOBILES
#### Franchisor Specific Guidelines

The Named Insured has made the following disclosures as a part of the application for the insurance afforded by this policy:

The Named Insured has a high "turn over" of drivers in his/her business; and/or,
The Named Insured must rely on retail delivery of his/her product.

In reliance upon the application for the insurance afforded by this policy and with the understanding of the above disclosures by the Named Insured, the Named Insured and the Company have agreed as follows:

**Named Insured is a Franchise of Pizza Hut and agrees to comply with all driver eligibility criteria required by the Franchisor. A copy of the Franchisor's standards must be on file with the Company. Failure to comply with the Franchisor's guidelines may void coverage under this policy.**

**I have read this SPECIAL RESTRICTION OF COVERAGE in its entirety and agree on behalf of all insureds, to comply with all of its terms and conditions:**

_____
**Signature of Insured or Officer of Insured Entity**

CA AS 0298 0810                                                    Page 1 of 1

**11/19/2013 01:26 PM**



**MUY Pizza L.L.C. Delivery Driver Disclosure and Authorization**

To become and remain a Delivery Deliver for the Company, please read and complete the following form:

- Employee/applicant agrees to allow the company to obtain motor vehicle reports (MVR) as required by the Driver Selection policy.  Records will be obtained by the RGM through Human resources.
- Any unacceptable driving record is a record with the DWI or DUI in the last five years, a record with more than three moving violations or accidents or any combination of the violations or accidents during the past three years.
- Employee will receive $1.00 for each order delivered in their vehicle.  This fee is for the use of the employee's vehicle (wear, tear, gas and oil) and not considered wages.
- It is the sole responsibility of the employee to have and to maintain adequate insurance coverage and to cover use of their personal automobile while on company business.  The employee is responsible for any bodily injuries or property damage resulting from any automobile accidents involving personal automobiles while on company business.
- The company does not insure any personal items stolen or damaged from a personal vehicle.
- Only employees 18 years of age or older are permitted to drive for the Company.
- Employee agrees to obey all traffic regulations and wear a seat belt at all times.
- Employee agrees to participate in EXPERT Driver training, complete the Driver Follow-up evaluation and take the EXPERT track certification test.
- Employee agrees to pass the Personal Vehicle Safety Check every six months.
- Employee agrees to notify management if they are involved in an accident or of any changes in the driving privileges or auto insurance coverage.
- Employee agrees to keep their vehicle clean and in good repair and display company signage as required while on duty.
- Employee authorizes the Company to obtain information regarding their driving performance or their insurance coverage at any time.
- Employee will not operate a vehicle while under the influence of chemicals or alcohol.
- Employee will not eat, drink or wear headphones while driving.
- Employee is responsible for declaring any tips he/she may receive while working for the Company.

By signing, I acknowledge that I have read the Delivery Driver Statement and fully understand its' content and agree that violations of any of its' provisions constitute a basis for non-hire status, removal of Delivery Driver duties and/or termination of employment. Furthermore, I authorize MUY Pizza L.L.C. (the Company) to obtain the necessary and periodic MVRs throughout the term of my employment with the Company.

EMPLOYEE AGREEMENT & INFORMATION:

Name (please print):_____  Date of Birth:_____

Address:_____  City:_____  State:_____

Texas Driver's License Number:_____  Number of years lived in Texas:_____

If less than 7 years, please list other states of residence with driver's license #:_____

Social Security Number:_____  Restaurant #:_____

Signature:_____  Date:_____

(Should an employee or applicant be rejected for employment, they may request a copy of their MVR.  Please contact HR at 201-493-3505 for a copy.)

Date _____

# VEHICLE SAFETY CHECK

*Pizza Hut*

Driver Name _____

Vehicle Make: _____ Model: _____ Year: _____

| | PASS | FAIL | DATE FIXED / INITIALS |
|---|---|---|---|
| 1. LIGHTS | | | |
| : "Red" Tail Lights | _____ | _____ | _____ |
| : "Red" Brake Lights | _____ | _____ | _____ |
| ; Headlights – Low/High | _____ | _____ | _____ |
| 2. WIPERS | _____ | _____ | _____ |
| 3. WINDOWS | _____ | _____ | _____ |
| 4. TIRES | | | |
| : Tread | _____ | _____ | _____ |
| : General Condition | _____ | _____ | _____ |
| 5. MIRRORS | | | |
| : Driver Sideview | _____ | _____ | _____ |
| · Inside Rearview | _____ | _____ | _____ |
| 6. BRAKES | _____ | _____ | _____ |
| 7. TURN SIGNALS | _____ | _____ | _____ |
| 8. SEAT BELTS | _____ | _____ | _____ |
| 9. CURRENT STATE INSPECTION STICKER (where applicable) | _____ | _____ | _____ |
| 10. CURRENT INSURANCE | _____ | _____ | _____ |
| 11. VEHICLE INTERIOR | _____ | _____ | _____ |

• By signing this form, I certify that I have personally inspected this vehicle; completed this form accurately; and taken the appropriate corrective action.

DATE: _____

_____
PIZZA HUT MANAGEMENT SIGNATURE          (Print Name)

• I agree it is solely my responsibility to keep all aspects of my vehicle, including but not limited to all items listed above, in good condition and in compliance with all laws at all times.
• I agree with the above stated condition of my vehicle. Except for any "Fail" condition noted above, all aspects of my vehicle are in good condition and comply with all laws.
• IF ANY "FAIL" CONDITION CURRENTLY EXISTS OR LATER ARISES, OR IF MY VEHICLE OTHERWISE IS NOT IN GOOD CONDITION OR NOT IN COMPLIANCE WITH ALL LAWS, I KNOW I CANNOT USE THIS VEHICLE FOR DELIVERY UNTIL THE CONDITION IS FIXED.
• I will not use any other vehicle for delivery unless I first notify my RGM and have a current (no more than 6 months old), acceptable Vehicle Safety Check performed for the vehicle and on file with my RGM.

DATE: _____

_____
DELIVERY DRIVER SIGNATURE               (Print Name)

Form No. 104400        Revised 2/01

## INSTRUCTIONS FOR CONDUCTING VEHICLE SAFETY CHECKS

A. Use only the form on the reverse side of this page.

B. Fill in driver's name, and vehicle description.

C. Evaluate Items as "Pass" or "Fail":

    **1. LIGHTS.**
- Tail and Brake Lights – "Pass" if illuminate "red" in color.
- Headlights – Low – "Pass" if both low-beams work.
- Headlights – High – "Pass" if both high-beams work.

    **2. WIPERS.** "Pass" if wipers go back and forth and blades are intact.

    **3. WINDOWS.** "Pass" if all windows are intact and allow good view.

    **4. TIRES.**
- Tread – "Pass" if all tires have at least 2/32 of an inch of tread in all grooves. Insert a U.S. penny upside down in the tread as indicated below. If the tread reaches the top of Lincoln's hair or further, there is at least 2/32 of an inch of tread. Measure tread at lowest point.



- General Condition – "Pass" if no bulges, cuts, exposed cords, or excessive uneven wear are visible.

    **5. MIRRORS.** "Pass" if intact.

    **6. BRAKES.** "Pass" if driver answers "yes" to "Do your brakes work properly?"

    **7. TURN SIGNALS.** "Pass" if both signal lights flash on and off when activated.

    **8. SEAT BELTS.** "Pass" if there is a driver-side seat belt is operational.

    **9. STATE INSPECTION STICKER.** In approximately 22 states, there are mandatory safety inspections. If a vehicle is licensed in one of the 22 states, a valid safety sticker must be present to "pass".

    **10. CURRENT INSURANCE.** File a copy of the declaration page listing insurance company name, vehicle, name of driver, effective dates, and limits of coverage in the employee's file folder. Liability coverage must meet or exceed state requirements.

    **11. VEHICLE INTERIOR.** "Pass" if vehicle interior is clean and free of litter.

D. Sign your name and date it.

E. HAVE DRIVER READ ALL INFORMATION AND  sign his/her name and date it if driver agrees with everything.

F. DO NOT HAVE DRIVER SIGN IF driver does not agree with everything, but you should note this fact below your signature.

G. WHEN "FAIL" ITEMS ARE FIXED, VERIFY THE FIX AND place your initials and date on the front of this form next to the item.

H. DRIVER MAY NOT DRIVE IF ANY OF THE FOLLOWING EXISTS:
- any item checked "Fail" has not been fixed, OR
- driver disagrees with any of your evaluations, OR
- driver refuses to sign the completed form.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## ADDITIONAL INSURED – DESIGNATED PERSON OR ORGANIZATION AND AMENDED CANCELLATION

This endorsement modifies insurance provided under the following·

COMMERCIAL AUTO EXCESS LIABILITY COVERAGE
COMMERCIAL HIRED AND NON-OWNED AUTO EXCESS COVERAGE

**A.   ADDITIONAL INSURED – DESIGNATED PERSON OR ORGANIZATION**

Subject to all its terms, conditions and endorsements, such insurance as is afforded by the policy shall also apply to the entity(ies) scheduled below as an additional insured, but only as respects liability arising from:

(1)   premises owned by or occupied by the Named Insured,
(2)   the contract entered into by the Named Insured, or
(3)   the work or business activities performed by or for the Named Insured as "as respects" below.

### SCHEDULE

| Name Of Additional Insured Person(s) Or Organization(s) |
| --- |
| Pizza Hut, Inc.<br>14841 North Dallas Parkway<br>Dallas, TX 75254-7552 |

**B.   <u>CANCELLATION:</u>**

The CONDITIONS CANCELLATION section is deleted in its entirety and replaced with the following:

**CANCELLATIONS**

This policy may only be canceled by the Named Insured by mailing to the Company <u>and to the additional insured(s) shown in paragraph A. above,</u> written notice stating when not less than thirty (30) days thereafter such cancellation shall be effective.  This policy may only be canceled by the Company by mailing to the Named Insured at the address shown in the Declarations <u>and to the additional insured(s) shown in paragraph A. above,</u> written notice stating when not less than thirty (30) days thereafter, (10) days for non-payment of premium, such cancellation shall be effective.   The mailing of notice as aforesaid shall be sufficient proof of notice.  The effective date of cancellation stated in the notice shall become the end of the policy period.  Delivery, with receipt, of such

CA AS 0115 0507                                                           Page 1 of 2

written notices either by the Named Insured or by the Company shall be equivalent to mailing.

If the Named Insured cancels, earned premium or minimum premium, whichever is greater, shall be computed in accordance with the customary short rate table and procedure.  If the Company cancels, earned premium or minimum premium, whichever is greater, shall be computed pro rata.  Premium adjustments may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation. If the insured cancels, the company will retain no less than 25% of the annual minimum and deposit as a minimum earned premium.

**NOTE:** The Named Insured understands that this notice of cancellation clause may be in conflict with any premium finance agreements signed or intended to be signed, but that as respects this policy's terms, agreements, conditions and coverage, this clause shall prevail.

CAUSE NO.: <u>15-05-54551-CV</u>

| | | |
|---|---|---|
| JESSE GARCIA, IRICA GARCIA, | § | IN THE DISTRICT COURT |
| INDIVIDUALLY AS NEXT | § | |
| FRIEND OF I.G., | § | |
| AND J.G., | § | |
| *Plaintiffs,* | § | |
| | § | |
| | § | 79TH JUDICIAL DISTRICT OF |
| | § | |
| JOHN MICHAEL CHARLES, | § | |
| MUY! PIZZA-TEJAS, LLC, | § | |
| MUY! BRANDS, LLC, | § | |
| PIZZA HUT, INC., AND MUY | § | |
| PIZZA, LLC, | § | |
| *Defendants.* | § | JIM WELLS COUNTY, TEXAS |

## PLAINTIFFS' FIRST AMENDED PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COME, JESSE GARCIA, IRICA GARCIA, INDIVIDUALLY AND As Next Friend of I.G., and J.G., hereinafter referred to by name or as Plaintiffs, and complain of JOHN MICHAEL CHARLES, MUY! PIZZA-TEJAS, LLC, MUY! BRANDS, LLC, PIZZA HUT, INC. and MUY PIZZA, LLC, hereinafter referred to by name or as Defendants and for cause of action would respectfully show unto the Court as follows:

1. Plaintiffs are residing in Jim Wells County, Texas. Plaintiffs intend that discovery be conducted under Level 3 of Rule 190.4 Texas Rules of Civil Procedure.

2. Defendant, MUY! PIZZA-TEJAS, LLC, is a Texas limited liability company and has appeared and answer the lawsuit.

3. Defendant, MUY! BRAND, LLC, is a Texas limited liability company and has appeared and answer the lawsuit.

4. Defendant, PIZZA HUT, INC., is a foreign corporation registered to operate in

EXHIBIT B

Texas and has appeared and answer the lawsuit.

5.      Defendant, John Michael Charles, is an individual residing in Jim Wells County, Texas and has appeared and answer the lawsuit.

6.      Defendant, MUY PIZZA, LLC, is a Texas limited liability company and may be served with citation by serving Marc Williams, Trinity Plaza II, 745 E. Mulberry, Suite 450, San Antonio, Texas 78212.

7.      Venue is proper before this Court pursuant to Tex. Civ. Prac. & Remedies Code §15.002(a) (3) since the incident which forms the basis for this cause of action occurred in Jim Wells County Texas.

8.      On May 9, 2014, Jesse Garcia, while attempting to pick up his children at school, was stopped behind a line of vehicles in the northbound lane of the 1400 block of Morningside Road, in Alice, Jim Wells County, Texas and was struck in the rear of his vehicle by a 2009 Nissan Versa owned and being operated by Defendant JOHN MICHAEL CHARLES.  IRICA GARCIA, I. G., and J. G. were passengers in the vehicle driven by Jesse Garcia.  The collision caused severe injuries and damages to the Plaintiffs.

9.      The occurrence made the basis of this suit, reflected in the above paragraph and the resulting injuries and damages were proximately caused by the negligent conduct of Defendants.  Defendant *JOHN MICHAEL CHARLES* operated the vehicle he was driving in a negligent manner because he violated the duty which he owed the Plaintiffs to exercise ordinary care in the operation of the motor vehicle in one or more of the following respects, including but limited to:

    a.      in failing to keep a proper lookout or such lookout, which a person of ordinary prudence would have maintained under same or similar circumstances;

    b.      in failing to control his speed;

2

c.     in failing to timely apply the brakes of the vehicle in order to avoid the collision in question;

d.     in failing to turn the vehicle in an effort to avoid the collision in question;

e.     in failing to maintain an assured clear distance;

f.     in failing to maintain financial responsibility;

g.     in failing to yield right of way; and

h.     in failing to stop properly.

10.     Defendants *MUY PIZZA-TEJAS, LLC, MUY PIZZA BRANDS, LLC, PIZZA HUT, INC., AND MUY PIZZA, LLC* are liable under the doctrine of respondeat superior for the conduct of *JOHN MICHAEL CHARLES* because he was operating the vehicle in the course and scope of his employment for *MUY PIZZA-TEJAS, LLC, MUY PIZZA BRANDS, LLC, PIZZA HUT, INC., AND MUY PIZZA, LLC.* Defendants were also negligent in one or more of the following respects:

a. negligent hiring;

b. negligent entrustment;

c. negligent training and safety implementation.

By reason of all of the above, Plaintiffs have suffered losses and damages in a sum within the jurisdictional limits of this court, and for which they now sue.

11.     Each of these acts and/or omissions, whether taken singularly or in any combination constitutes negligence and negligence per se and gross negligence which proximately caused the collision and injuries and other losses as specifically set forth herein, all of which the Plaintiffs suffered and which the Plaintiffs will continue to suffer in the future, if not for the remainder of their natural lives.

12     As a direct and proximate result of the collision and the negligent conduct of the

3

Defendants, Plaintiffs suffered severe bodily injuries. The injuries have had a serious effect on the Plaintiffs' health and well being. Some of the effects are permanent and will abide with the Plaintiffs for a long time into the future, if not for their entire lives.

13.    As a further result of all of the above, Plaintiffs have incurred expenses for medical care and attention. These expenses were incurred for the necessary care and treatment of the injuries resulting from the incident complained of. The charges are reasonable and were the usual and customary charges made for such services in the county where they were incurred.

14.    As a further result of the injuries sustained by the Plaintiffs, there is a reasonable probability that they will require further medical care and attention and will incur future reasonable and necessary expenses for their medical care and attention.

15.    By reason of all of the above, Plaintiffs have suffered losses and damages in a sum within the jurisdictional limits of this Court for which they now sue.

16.    Pursuant to RULE 47 of the TEXAS RULES OF CIVIL PROCEDURE, Plaintiffs seek monetary relief over $1,000,000.00 and a demand for judgment for all other relief to which Plaintiffs may justly be entitled.

17.    Plaintiffs further request both pre judgment and post judgment interest on all damages as allowed by law.

18.    Plaintiffs demand a trial by jury. Plaintiffs acknowledge payment this date of the required jury fee.

19.    Pursuant to Tex.R.Civ.P. 193.7, Plaintiffs give notice of intent to use documents produced by any party hereto in any pretrial proceeding and at trial against the producing party.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs request that the Defendants be cited to appear and answer, and on final trial hereafter, the Plaintiffs have judgment against

4

Defendants, jointly and severally, in an amount within the jurisdictional limits of this Court, together with all pre judgment and post judgment interest as allowed by law, costs of Court, and for such other and further relief to which Plaintiffs may be justly entitled by law and equity, including, but not limited to:

1. Pain and suffering in the past;
2. Pain and suffering in the future;
3. Mental anguish in the past;
4. Mental anguish in the future;
5. Past medical expenses;
6. Future medical expenses;
7. Physical impairment in the past;
8. Physical impairment in the future;
9. Physical disfigurement in the past;
10. Physical disfigurement in the future;
11. Loss of earnings;
12. Loss of earning capacity;
13. Pre judgment interest;
14. Post judgment interest;
15. Exemplary damages;
16. Property damage; and
17. Loss of use.

Respectfully submitted,

The Law Offices of Thomas J. Henry
521 Starr Street
Corpus Christi, Texas 78401
361/ 985-0600 – Phone
361/ 985-0601 – Facsimile

By:    /s/ Peter M. Zavaletta
Thomas J. Henry
State Bar No.: 09484210
Peter M. Zavaletta
State Bar No.: 22251600
*email: *pzavaletta-svc@thomasjhenrylaw.com*

**\* service by email to this address only**

STATE OF TEXAS
COUNTY OF JIM WELLS

I, R. David Guerrero District Clerk of Jim Wells
County, Texas do hereby certify that the fore-
going is a true and correct copy of the original
record, now in my lawful custody and possession,
filed on April 15, 2015 as appears
In File in my office

Witness my official hand and seal of office, this
May 17, 2016

R. DAVID GUERRERO, District Clerk
Jim Wells County, Texas
By Rosie Garcia Deputy

5

EFILE 4/15/2016

# CIVIL CASE INFORMATION SHEET

CAUSE NUMBER *(FOR CLERK USE ONLY)*: __16-04-55856-CV__     COURT *(FOR CLERK USE ONLY)*: __79TH DISTRICT COURT__

STYLED __MUY Pizza-Tejas, LLC v. American Safety Indemnity Company and Riverstone Resources, LLC__

*(e.g., John Smith v. All American Insurance Co; In re Mary Ann Jones; In the Matter of the Estate of George Jackson)*

A civil case information sheet must be completed and submitted when an original petition or application is filed to initiate a new civil, family law, probate, or mental health case or when a post-judgment petition for modification or motion for enforcement is filed in a family law case. The information should be the best available at the time of filing.

| 1. Contact information for person completing case information sheet: | Names of parties in case: | Person or entity completing sheet is: |
|---|---|---|
| **Name:** Richard Foster<br><br>**Address:** 745 E. Mulberry, Suite 450<br><br>**City/State/Zip:** San Antonio, TX 78212<br><br>**Signature:** *[signature]* | **Email:** rfoster@prdg.com<br><br>**Telephone:** 210-736-3900<br><br>**Fax:** 210-736-1992<br><br>**State Bar No:** 07295100 | **Plaintiff(s)/Petitioner(s):** MUY Pizza-Tejas, LLC<br><br>**Defendant(s)/Respondent(s):** American Safety Indemnity Company and Riverstone Resources, LLC<br><br>[Attach additional page as necessary to list all parties] | ☒ Attorney for Plaintiff/Petitioner<br>☐ Pro Se Plaintiff/Petitioner<br>☐ Title IV-D Agency<br>☐ Other: _____<br><br>**Additional Parties in Child Support Case:**<br><br>Custodial Parent:<br><br>Non-Custodial Parent:<br><br>Presumed Father: |

**2. Indicate case type, or identify the most important issue in the case *(select only 1)*:**

| Civil | | | Family Law | |
|---|---|---|---|---|
| **Contract** | **Injury or Damage** | **Real Property** | **Marriage Relationship** | **Post-judgment Actions (non-Title IV-D)** |
| *Debt/Contract*<br>☐ Consumer/DTPA<br>☐ Debt/Contract<br>☐ Fraud/Misrepresentation<br>☐ Other Debt/Contract:<br><br>*Foreclosure*<br>☐ Home Equity—Expedited<br>☐ Other Foreclosure<br>☐ Franchise<br>☒ Insurance<br>☐ Landlord/Tenant<br>☐ Non-Competition<br>☐ Partnership<br>☐ Other Contract: | ☐ Assault/Battery<br>☐ Construction<br>☐ Defamation<br>*Malpractice*<br>☐ Accounting<br>☐ Legal<br>☐ Medical<br>☐ Other Professional Liability:<br><br>☐ Motor Vehicle Accident<br>☐ Premises<br>*Product Liability*<br>☐ Asbestos/Silica<br>☐ Other Product Liability List Product:<br><br>☐ Other Injury or Damage: | ☐ Eminent Domain/ Condemnation<br>☐ Partition<br>☐ Quiet Title<br>☐ Trespass to Try Title<br>☐ Other Property: | ☐ Annulment<br>☐ Declare Marriage Void<br>*Divorce*<br>☐ With Children<br>☐ No Children | ☐ Enforcement<br>☐ Modification—Custody<br>☐ Modification—Other<br><br>**Title IV-D**<br>☐ Enforcement/Modification<br>☐ Paternity<br>☐ Reciprocals (UIFSA)<br>☐ Support Order |
| | | **Related to Criminal Matters** | **Other Family Law** | **Parent-Child Relationship** |
| | | ☐ Expunction<br>☐ Judgment Nisi<br>☐ Non-Disclosure<br>☐ Seizure/Forfeiture<br>☐ Writ of Habeas Corpus— Pre-indictment<br>☐ Other: | ☐ Enforce Foreign Judgment<br>☐ Habeas Corpus<br>☐ Name Change<br>☐ Protective Order<br>☐ Removal of Disabilities of Minority<br>☐ Other: | ☐ Adoption/Adoption with Termination<br>☐ Child Protection<br>☐ Child Support<br>☐ Custody or Visitation<br>☐ Gestational Parenting<br>☐ Grandparent Access<br>☐ Parentage/Paternity<br>☐ Termination of Parental Rights<br>☐ Other Parent-Child: |
| **Employment** | **Other Civil** | | | |
| ☐ Discrimination<br>☐ Retaliation<br>☐ Termination<br>☐ Workers' Compensation<br>☐ Other Employment: | ☐ Administrative Appeal<br>☐ Antitrust/Unfair Competition<br>☐ Code Violations<br>☐ Foreign Judgment<br>☐ Intellectual Property | ☐ Lawyer Discipline<br>☐ Perpetuate Testimony<br>☐ Securities/Stock<br>☐ Tortious Interference<br>☐ Other: | | |
| **Tax** | **Probate & Mental Health** | | | |
| ☐ Tax Appraisal<br>☐ Tax Delinquency<br>☐ Other Tax | *Probate/Wills/Intestate Administration*<br>☐ Dependent Administration<br>☐ Independent Administration<br>☐ Other Estate Proceedings | ☐ Guardianship—Adult<br>☐ Guardianship—Minor<br>☐ Mental Health<br>☐ Other: | | |

**3. Indicate procedure or remedy, if applicable *(may select more than 1)*:**

| | | |
|---|---|---|
| ☐ Appeal from Municipal or Justice Court<br>☐ Arbitration-related<br>☐ Attachment<br>☐ Bill of Review<br>☐ Certiorari<br>☐ Class Action | ☐ Declaratory Judgment<br>☐ Garnishment<br>☐ Interpleader<br>☐ License<br>☐ Mandamus<br>☐ Post-judgment | ☐ Prejudgment Remedy<br>☐ Protective Order<br>☐ Receiver<br>☐ Sequestration<br>☐ Temporary Restraining Order/Injunction<br>☐ Turnover |

**4. Indicate damages sought *(do not select if it is a family law case)*:**

☐ Less than $100,000, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorney fees<br>
☐ Less than $100,000 and non-monetary relief<br>
☐ Over $100, 000 but not more than $200,000<br>
☒ Over $200,000 but not more than $1,000,000<br>
☐ Over $1,000,000

Rev 2/13

EFILE 4/15/2016

## CIVIL PROCESS REQUEST FORM

> FOR EACH PARTY SERVED YOU MUST FURNISH ONE (1) COPY OF THE PLEADING
> FOR WRITS FURNISH TWO (2) COPIES OF THE PLEADING PER PARTY TO BE SERVED

**CASE NUMBER:** 16-04-55856-CV           **CURRENT COURT:** 79TH DISTRICT COURT

**TYPE OF INSTRUMENT TO BE SERVED** (See Reverse For Types): Plaintiff's Original Petition

**FILE DATE:** 04/15/2016

**SERVICE TO BE ISSUED ON (Please List Exactly As The Name Appears In The Pleading To Be Served):**

1. NAME: American Safety Indemnity Company

   ADDRESS: 250 Commercial Street, Suite 5000, Manchester, New Hampshire 03101-1116

   AGENT, (if applicable): Nicholas C. Bentley

**TYPE OF SERVICE/PROCESS TO BE ISSUED** (see reverse for specific type):

SERVICE BY (check one):

- ☐ ATTORNEY PICK-UP                    ☐ CONSTABLE
- ☐ CIVIL PROCESS SERVER Authorized Person to Pick-up: _____  Phone:
- ☐ MAIL                                ☒ CERTIFIED MAIL
- ☐ PUBLICATION:                        Type of Publication:
- ☐ COURTHOUSE DOOR,  or                ☐ NEWSPAPER OF YOUR CHOICE:

## CIVIL PROCESS REQUEST FORM

| FOR EACH PARTY SERVED YOU MUST FURNISH ONE (1) COPY OF THE PLEADING |
| --- |
| FOR WRITS FURNISH TWO (2) COPIES OF THE PLEADING PER PARTY TO BE SERVED |

**CASE NUMBER:** 16-04-55856-CV          **CURRENT COURT:** 79TH DISTRICT COURT

**TYPE OF INSTRUMENT TO BE SERVED** (See Reverse For Types): Plaintiff's Original Petition

**FILE DATE:** 04/15/2016

**SERVICE TO BE ISSUED ON** (Please List Exactly As The Name Appears In The Pleading To Be Served):

1.  NAME: American Safety Indemnity Company

    ADDRESS: 250 Commercial Street, Suite 5000, Manchester, New Hampshire 03101-1116

    AGENT, (*if applicable*): Commissioner of the Texas Department of Insurance, David Mattax

    333 Guadalupe, Austin, Texas 78701

**TYPE OF SERVICE/PROCESS TO BE ISSUED** (*see reverse for specific type*): **SERVICE BY** (*check one*):

**SERVICE BY** (*check one*):

- [ ] **ATTORNEY PICK-UP**      [ ] **CONSTABLE**
- [ ] **CIVIL PROCESS SERVER** Authorized Person to Pick-up:          Phone:
- [X] **MAIL**                  [ ] **CERTIFIED MAIL**
- [ ] **PUBLICATION:**          Type of Publication:
- [ ] **COURTHOUSE DOOR,** or [ ] **NEWSPAPER OF YOUR CHOICE:**

**MAIL TO:**

**Raj Aujla**
**Porter, Rogers, Dahlman & Gordon, PC**
**745 E. Mulberry Ave, Suite 450**
**San Antonio, TX 78212**

EFILE 4/15/2016

## CIVIL PROCESS REQUEST FORM

| FOR EACH PARTY SERVED YOU MUST FURNISH ONE (1) COPY OF THE PLEADING |
|---|
| FOR WRITS FURNISH TWO (2) COPIES OF THE PLEADING PER PARTY TO BE SERVED |

**CASE NUMBER:** 16-04-55856-CV                **CURRENT COURT:** 79TH DISTRICT COURT

**TYPE OF INSTRUMENT TO BE SERVED** (See Reverse For Types):  Plaintiff's Original Petition

**FILE DATE:**  04/15/2016

**SERVICE TO BE ISSUED ON (Please List Exactly As The Name Appears In The Pleading To Be Served):**

1.  NAME:  RiverStone Resources, LLC

    ADDRESS:  1999 Bryan St., Ste. 900, Dallas, Texas  75201

    AGENT, (*if applicable*):  CT Corporation System,

**TYPE OF SERVICE/PROCESS TO BE ISSUED** (*see reverse for specific type*):

    SERVICE BY (*check one*):

☐ ATTORNEY PICK-UP                    ☐ CONSTABLE
☐ CIVIL PROCESS SERVER Authorized Person to Pick-up: _____ Phone:
☐ MAIL                                ☒ CERTIFIED MAIL
☐ PUBLICATION:                        Type of Publication:
☐ COURTHOUSE DOOR,  or                ☐ NEWSPAPER OF YOUR CHOICE:

ORIGINAL

| CITATION – Personal Service |

THE STATE OF TEXAS                   COUNTY OF JIM WELLS

CAUSE NO. 16-04-55856-CV

TO: AMERICAN SAFETY INDEMNITY COMPANY BY SERVING COMMISSIONER OF THE TEXAS DEPARTMENT OF INSURANCE,
DAVID MATTAX, 333 GUADALUPE, AUSTIN, TEXAS 78701

(or wherever he/she may be found) Notice to DEFENDANT    : You have been sued. You may employ an attorney. If you, or your attorney, do not file a written answer with the clerk who issued this citation by 10:00 A.M.on the first Monday following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you.

| | |
|---|---|
| Court: | 79TH Judicial District Court, Alice, Jim Wells, Texas |
| Cause No.: | 16-04-55856-CV |
| Date of Filing: | APRIL 15, 2016 |
| Document: | PLAINTIFF'S ORIGINAL PETITION |
| Parties in Suit: | MUY PIZZA-TEJAS, LLC<br><br>V.<br><br>AMERICAN SAFETY INDEMNITY COMPANY AND RIVERSTONE RESOURCES, LLC |
| Clerk: | R. David Guerrero, District Clerk, 200 N. Almond St., Ste. 207/P.O. Drawer 2219 Alice, TX 78333 |
| Party or Party's Attorney: | RICHARD G. FOSTER, 745 EAST MULBERRY AVE., SUITE 450, SAN ANTONIO, TEXAS 78212 |

Issued under my hand and seal of this said court on the this the 22 day of APRIL , 20 16 .

R, David Guerrero, District Clerk
Jim Wells County, Texas

BY: _____ , Deputy

### Service Return

Came to hand on the _____ day of _____ , 20___ , at _____ m., and executed on the _____ day of _____ , 20___ , at _____ M by delivering to the within named

_____

_____ in person a true copy of this citation, with attached copy(ies) of the _____ at _____ .

[ ] Not executed. The diligence use in finding DEFENDANT  being _____

[ ] Information received as to the whereabouts of  DEFENDANT  being_____

| | |
|---|---|
| Service Fee: $ | Sheriff/Constable |
| | County, Texas |
| Service ID No. | Deputy/Authorized Person |

### VERIFICATION

On this day personally appeared _____ known to me to be the person whose name is subscribed on the foregoing instrument and who has stated: upon penalty of perjury, I attest that the foregoing instrument has been executed by me in this cause pursuant to the Texas Rules of Civil Procedure.  I am over the age of eighteen years and I am not a party to or interested in the outcome of this suit, and have been authorized by the Jim Wells County Courts to serve process.

Subscribed and sworn to before me on this the _____ day of _____ , 20___ .

_____Notary Public

** Service by Rule 106 TRC if directed by attached Court Order

POSTED